IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2006-3, Commercial Mortgage Pass-Through Certificates, Series 2006-3, acting by and through its special servicer, TORCHLIGHT LOAN SERVICES, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> RLJ LODGING TRUST, a Maryland real estate investment trust, <br><br> Defendant. | Case No. 13 C 758 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Wells Fargo Bank, N.A. by and through its special servicer, Torchlight Loan Services, LLC, filed this law suit against RLJ Lodging Trust (RLJ Trust) for breach of a guaranty executed in connection with a loan Wells Fargo's predecessor Wachovia Bank, NA, made to a party affiliated with the Trust. Plaintiff has moved for summary judgment. (Dkt. 108.) For the reasons stated below, Wells Fargo's motion is denied.[1]

---

[1] The court has jurisdiction under 28 U.S.C. § 1332(a) and (c). Wells Fargo is a national banking association with its main office located in South Dakota. RLJ Lodging Trust and its trustees are citizens of states other than South Dakota. (*See* Dkt. 59 at 3). The amount in controversy exceeds $75,000. The citizenship of Torchlight as a nominal party is disregarded. *See Matchett* v. *Wold*, 818 F.2d 574, 576 (7th Cir. 1987). Venue is proper in this district under 28 U.S.C. § 1391(b) and (c)(2).

1

# BACKGROUND[2]

## I. The Loan and Guaranty

On June 14, 2006, Wachovia Bank made a $5.7 million loan to RLJ II – C Goshen, LLC secured by RLJ II Goshen's promissory note, mortgage and security agreement. (Dkt. 110 (Pl.'s 56.1 Stmt. of Fact) ¶ 9–10; Dkt. 110-1, Exh. 1, Promissory Note; *Id.* Exh. 2, Mortgage and Security Agreement.) On the same day, RLJ Lodging Fund II, L.P. and RLJ Lodging Fund II (PF #1), L.P. executed a guaranty of certain obligations in the promissory note and mortgage. (Pl.'s 56.1 Stmt. of Fact ¶ 11.) The loan funds were used to acquire a hotel located in Goshen, Indiana operated as a Courtyard by Marriott as part of RLJ Trust's portfolio of hotels. (*Id.* ¶ 15.) On May 16, 2011, RLJ Lodging Fund II, L.P. and RLJ Lodging Fund II (PF #1), L.P merged into RLJ Trust, and RLJ Trust succeeded to their obligations under the guaranty. (*Id.* ¶ 12–13.) At times relevant to the complaint, RLJ Trust was the managing member of RLJ II – C Goshen, LLC. (Dkt. 110-1, Exh. 3, Answer to Second Set of Ints. ¶ 1.) RLJ Trust also executed an identical guaranty. (Pl.'s 56.1 Stmt. of Fact ¶ 14 (citing Dkt. 91, Answer ¶¶ 41–42); Dkt. 110-1,

---

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to defendant. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Rule 56.1 are deemed admitted.

In their reply brief, Wells Fargo requests that the court strike defendant's statement of additional material facts for repeated violations of Local Rule 56.1. Although the argument is well taken in many respects, the court has done its best to winnow the facts to those supported by the record. As such, the court will not strike the statement of additional facts. Defendant's counsel is advised to take this comment to heart in future summary judgment filings.

Exh. 6, 2011 Guaranty.)[3]

The promissory note and the guaranty specified the loan as non-recourse except with respect to the property, meaning that the guarantor would not be liable for any deficiency judgment in the event of a default, except under certain conditions.[4] The guaranty executed alongside the loan also addresses the non-recourse nature of the loan, as well as conditions in which partial or full recourse are possible. (Dkt. 110-1, Exh. 6, 2011 Guaranty.) As pertinent here, the guaranty provided for full recourse should the Grantor or an affiliate interfere with the lender's foreclosure action in the event of default:

> [I]n the event . . . any Grantor or any Affiliate of any Grantor contests or in any material way interferes with, directly or indirectly (collectively, a "Contest"), any foreclosure action, . . . *whether by* making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, or otherwise (provided that if any such Person obtains a non-appealable order successfully asserting a Contest, Guarantor shall have no liability under this clause (iv)), then the Guaranteed Obligations shall also include the unpaid balance of the Debt.

(Dkt. 110-3, Exh. 6, Guaranty § 1.2; *Id.* Exh. 2, Mortgage and Security Agreement § 18.32; Dkt. 118 (Def.'s 56.1 Stmt. of Facts) ¶ 9.)

### III. The Default and Foreclosure

In November 2011, RLJ Trust decided to cease payments on the loan and to surrender the Goshen hotel property to the lender. (Pl.'s 56.1 Stmt. of Fact ¶¶ 48, 50.) On December 1, 2011,

---

[3] Wells Fargo, the assignee of Wachovia's rights under the loan and guaranties, is trustee of a real estate mortgage investment conduit known as ML-CFC Commercial Mortgage Trust 2006-3, Commercial Mortgage Pass-Through Certificates, Series 2006-3. (Pl.'s 56.1 Stmt. of Fact ¶ 1.) Torchlight is the special servicer for the Mortgage Trust. (*Id.* ¶ 3.)

[4] According to RLJ Trust, non-recourse lending is a prominent feature of commercial mortgage-backed securities loans and thus a material inducement to investors such as RLJ to provide capital for the purchase of real estate. (Dkt. 116 at 3.)

a trustee of RLJ Trust wrote on behalf of RLJ II – Goshen, LLC[5] to the master servicer of the mortgage trust stating that RLJ Trust was "ready to immediately transfer title to the Property to [the lender] or [its] designee and to work closely with [it] to effectuate a smooth transition in connection with such transfer." (*Id.* ¶ 51; Dkt. 110-3 Exh. 26, Letter to Midland; Def.'s 56.1 Stmt. of Add'l Facts ¶ 14.) A few days later, RLJ Trust informed White Lodging[6] of its intention to cease debt service and to transfer the property to the lender or its designee. (Pl.'s 56.1 Stmt. of Fact ¶ 53; Dkt. 110-3, Exh. 27, Letter to White Lodging.) By February 2012 the loan was in default, and on April 20, 2012 Wells Fargo filed a foreclosure action in an Indiana state court against RLJ II – C Goshen LLC and RLJ II – C Goshen Lessee, LLC. (Pl.'s 56.1 Stmt. of Fact ¶¶ 56, 63; Dkt. 110-3, Exh. 31, Ind. Ct. Compl.)

After receiving the foreclosure complaint, RLJ Trust's and Torchlight's foreclosure counsel had a conference call in which RLJ Trust's counsel reiterated its desire to cooperate fully with the turnover of the property via a deed in lieu of foreclosure so as to avoid the expense of a foreclosure proceeding. (Def.'s 56.1 Stmt. of Add'l Facts ¶ 31; Dkt. 118-3, Exh. 3, Leval Dec. ¶ 4; Dkt. 118-1, Exh. 1, Dawson Dec. ¶ 6; *Id.* Exhibit A to Dawson Dec., Ind. Ct. Trans. at 17; *Id.* Exhibit B to Dawson Dec., Ind. Int. Resp. No. 4.) Nonetheless, on June 25, 2012, the Goshen LLCs filed an answer in the foreclosure action in which they broadly professed lack of knowledge of Wells Fargo's allegations (even where supporting documentation was attached to the complaint) and denied certain allegations regarding detention of personal property also pledged as security under the loan agreement. (Dkt. 110-3, Exh. 36, Answer and Affirmative

---

[5] The letter was on RLJ Trust's stationery but signed by the trustee in his capacity as President of RLJ II – C Goshen, LLC. There seems to be no dispute, however, that RLJ Trust had authority to act on behalf of the Goshen LLC or that the Goshen LLC was an affiliate of RLJ Trust.

[6] Before October 2009, White Lodging handled the collection of revenue and payment of expenses at the hotel. (Def.'s 56.1 Stmt. of Add'l Facts ¶ 14.)

Defenses.) They admitted, however, the existence of the promissory note and guaranties and that the borrower had failed to pay amounts due and owing under the Note. (*Id.* ¶ 28.) They averred several times that they had offered to turn over the collateral. The pleading also included five statements labeled affirmative defenses:

> 1. Payments have been made pursuant to the Loan Documents that may reduce the amounts owed.
> 2. The Defendants have offered to turn over the Collateral, including the Personal Property, to Plaintiff, thus making these proceedings unnecessary and an ineffective use of the Court's resources.
> 3. Pursuant to Indiana Trial Rule 17(A), Plaintiff is not the real party in interest.
> 4. Pursuant to Trial Rule 12(B)(6), Plaintiff fails to state a claim for which relief can be granted.
> 5. Defendants reserve their rights to update or amend their affirmative defenses as information is discovered through this litigation.

(Pl. 56.1, Stmt. of Fact ¶ 64; Dkt. 110-3, Exh. 36, Answer and Affirmative Defenses).[7]

On or about February 19, 2013 defendants moved to amend the pleading to withdraw any "perceived denials" and the affirmative defenses. (Pl. 56.1, Stmt. of Fact ¶ 64, ¶ 66; Dkt. 110-3, Exh. 33, Motion to Amend; *Id.*, Exh. 34, Chronological Case Summary) On May 24, 2014, the court entered an agreed judgment and decree of foreclosure in favor of Wells Fargo for the total amount of $6,566.885.51. (Pl. 56.1, Stmt. of Fact ¶ 64, ¶ 69–70; Dkt. 110-1, Exh. 4, Agreed Judgment.) The Goshen hotel property was sold at foreclosure sale for $1,600,000, (Pl. 56.1, Stmt. of Fact ¶ 71), leaving a deficiency of $4,996,855.51.

---

[7] Other than challenging the real party in interest, the defenses are better described as partial denials. A proper affirmative defense is one which "raises a matter outside the scope of plaintiff's *prima facie* case and is thus a matter not raised by a simple denial," *Bobbitt* v. *Victorian House*, 532 F.Supp.734, 736 (N.D. Ill. 1982) (citing 2A Moore's Federal Practice ¶ 8.27(3) at 8–250, 8–254), or "generally admits the matters in a complaint but suggests some other reason why there is no right of recovery." *Id.* (citing 5 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1270 at 292).

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24. Contract cases such as this one are often prime candidates for summary judgment because contract interpretation is a question of law. *SAMS Hotel Grp., LLC* v. *Environs, Inc.,* 716 F.3d 432, 434 (7th Cir. 2013); *see also Automation by Design, Inc.* v. *Raybestos Prods. Co.,* 463 F.3d 749, 753 (7th Cir. 2006) ("Because the primary question is interpretation of a written contract, this matter is particularly amenable to summary judgment.").

**ANALYSIS**

Wells Fargo contends that RLJ Trust is liable for the full amount due under the loan because the Goshen LLCs (1) triggered the guaranty by contesting its efforts to foreclose, (2) violated various separateness or Simple Purpose Entities (SPE) provisions in the loan documents, and (3) breached their obligation to maintain adequate capitalization by failing to pay debts as they came due (*i.e.*, debt service). (Dkt. 53 ¶¶ 64–69.)

The guaranty provides that New York law governs; neither side argues to the contrary. (*See* Dkt. 110-1, Exh. 6, Guaranty § 5.3.) The interpretation of a guaranty is governed by ordinary contract law principles. *See Gen. Phoenix Corp.* v. *Cabot,* 300 N.Y. 87, 92, 89 N.E.2d 238 (Ct. App. 1949). The construction and interpretation of a contract is an issue of law for the court. *Id.*; *805 Third Ave. Co.* v. *M.W. Realty Associates*, 58 N.Y.2d 447, 451, 448 N.E.2d 445, 461 N.Y.S.2d 778 (Ct. App. 1983).

To recover on a guaranty under New York law, a creditor "need prove no more than [1] an absolute and unconditional guaranty, [2] the underlying debt, and [3] the guarantor's failure to perform under the guarantee." *Kensington House Co.* v. *Oram*, 293 A.D.2d 304, 305, 739 N.Y.S.2d 572 (Mem) (App. Div. 2002). There is no dispute of material fact that the first and second elements of Wells Fargo's claim are established. The last element—that the grantor failed to perform under the guaranty—is the focus of the court's analysis.

**I.     Whether the Grantor Contested the Foreclosure, Triggering the Guaranty Obligations**

Wells Fargo relies on the guaranty's stipulation that if the Grantor (the Goshen LLCs) "contests or in any material way interferes with" the foreclosure, "directly or indirectly, by making any motion, . . . , claiming any defense, . . . , or otherwise," the lender has recourse against the guarantor. Thus, it argues, by filing an answer to the foreclosure complaint, denying

7

thirty-three allegations,[8] asserting affirmative defenses, and praying for judgment in its favor, the Goshen entities contested the foreclosure.[9]

RLJ Trust counters that Wells Fargo's mechanical interpretation does not address the commercial context in which the guaranty arose and that, reading the loan documents in a commercially reasonable manner, the defendants did not contest the foreclosure, given its efforts to turn over the property and cooperate with the foreclosure. Furthermore, defendant argues that the "contest" provision must be interpreted in a manner that best preserves the non-recourse nature of the loan. (*See id.* (citing *U.S. Bank Nat'l Assoc.* v. *Rich Albany Hotel, LLC*, No. 83–12, 2013 WL 6639512, at *3 (N.Y. Sup. Ct. Dec. 16, 2013)).)

As such, the issue is whether the Grantors' filing a pleading denying liability and asserting affirmative defenses in the foreclosure action was "a contest" invoking recourse under the guaranty against RLJ Trust.

### A.   Construing the Meaning of "Contest"

A guaranty is a contract. *Louis Dreyfus Energy Corp.* v. *MG Ref. & Mktg., Inc.*, 2 N.Y.3d 495, 500, 812 N.E.2d 936, 780 N.Y.S.2d 110 (Ct. App. 2004). Under New York law, "'[t]he terms of the guaranty . . . are to be strictly construed in favor of a private guarantor," *665–75 Eleventh Ave. Realty Corp.* v. *Schlanger*, 265 A.D.2d 270, 271, 697 N.Y.S.2d 270 (App. Div. 1999), and must be read in the context of the loan agreement, which was executed contemporaneously." *See Greenwich Capital Fin. Prods., Inc.* v. *Negrin*, 74 A.D.3d 413, 415,

---

[8] Except as stated above, the thirty-three denials were prefaced with a profession of lack of information sufficient to form a belief. Under Indiana rules of pleading, "If [a defendant] lacks knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and his statement shall be considered a denial." Ind. R. Trial P. 8

[9] Wells Fargo also cites the motion for leave to amend the answer and withdraw affirmative defenses as "contesting" the foreclosure. Because the amended pleading amounted to admission of liability, however, this assertion is disregarded in the analysis.

903 N.Y.S.2d 346 (App. Div. 2010). Where a written contract is unambiguous, it should be enforced according to its terms, and "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *W.W.W. Assocs., Inc.* v. *Giancontieri*, 77 N. Y.2d 157, 162, 566 N.E.2d 639, 565 N.Y.S.2d 440 (Ct. App. 1990). Whether a contract is ambiguous is a question of law, and extrinsic evidence should not be considered to create an ambiguity where there would otherwise be none. *Id.* at 162–63. "The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Associates, Inc.* v. *ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (quoting *Bethlehem Steel Co.* v. *Turner Constr. Co.*, 2 N.Y.2d 456, 459, 141 N.E.2d 590, 161 N.Y.S.2d 90 (1957)).

"[T]he court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *Zuchowski* v. *Zuchowski*, 85 A.D.3d 777, 778, 925 N.Y.S.2d 541 (App. Div. 2011) (quoting *Herzfeld* v. *Herzfeld*, 50 A.D.3d 851, 851, 857 N.Y.S.2d 170 (App. Div. 2008)). Put differently, a court should not interpret a contract in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171, 766 N.Y.S.2d 561 (App. Div. 2003) (internal citations omitted).

Wells Fargo urges that "contests" is disjunctive from "or in any way materially interferes . . . with," such that making any motion or claiming any defense in a foreclosure action is a contest without regard to whether it amounted to material interference. (*See* Dkt. 124 (Pl. Reply at 5.) Read this way, even the making of a motion to withdraw a pleading is contesting. Such a

9

construction, however, renders superfluous the phrase "or in any material way interferes" because the mere making of a motion or claiming a defense would be a breach, leaving one to wonder what the term "materially interferes" adds. Moreover, to read "contests" as Wells Fargo proposes would work a forfeiture that is inconsistent with other terms of the contract, such as the lender's *limited* recourse against the borrower for actual damages caused by the borrower such as waste, mismanagement and failure to make capital expenditures at the hotel.

In context, the commercially reasonable interpretation is that the drafter intended "contests" to refer to a material interference with the foreclosure. For these reasons the court concludes that the guaranty provides for full recourse to the lender for actions that prevent or frustrate the lender from exercising its right to foreclose against the property (*i.e.*, actions that materially interfere with the lender's exercise of its default remedies).

### B. Whether the Pleading Materially Interfered With the Foreclosure

To address whether RLJ Trust contested the foreclosure, the term "material" needs to be defined. As generally understood in the legal world, "material" means "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." BLACKS LAW DICTIONARY (10th ed. 2014.) Based on this definition, Wells Fargo must show that the pleading was somehow important to, or significantly interfered with, its ability to foreclose.

In *Tamach Airport Manager, LLC,* v. *HRC Fund III Pooling Dom. LLC*, No. 603817/08, 2010 WL 2106221 (N.Y. Sup. May 10, 2010),[10] the loan was non-recourse with specified conditions under which the lender could obtain full recourse from the borrower and the grantors.

---

[10] Wells Fargo cites to several cases as authority for claiming that courts construing analogous provisions under New York law have concluded that similar actions resulted in guaranty liability, including filing in bankruptcy and failing to pay real estate taxes. (Dkt. 109 at 6.) In all instances, the court was not treating whether the grantor had contested a foreclosure. Thus, the cases give little guidance here.

*Id.* at *2. Similar to here, the loan agreement provided that the non-recourse aspect of the agreement would become null and void if

> Borrower or any Affiliate contests or in any material way interferes with, directly or indirectly (collectively, a "Contest"), any foreclosure action . . . (whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, seeking to consolidate any such foreclosure or other enforcement with any other action, or otherwise).

*Id.* After the borrower defaulted, the lender undertook to foreclose against the property. *Id.* To prevent the foreclosure, the borrower commenced an action contesting the validity of and seeking to enjoin the foreclosure sale. *Id*. Although the borrower's action was unsuccessful and the foreclosure sale was held less than three months after it was initially planned to occur, the court held that by commencing litigation to halt the sale, the borrower "nullified the non-recourse nature of the loan, and now they are responsible for the full amount." *Id.* at *3.

The parties have not addressed whether the grantor materially interfered with the foreclosure as the court has interpreted "contests," and the record indicates that there may be genuine issues of fact that would bear on resolution. Thus, summary judgment must be denied on this issue.

## II. Whether Defendant Violated the Single Purpose Entities Provision and/or the Adequate Capitalization Provision, Triggering the Guaranty

Wells Fargo contends that RLJ is liable for the full amount of indebtness because the Goshen LLCs allegedly breached the SPE provisions contained in the mortgage. Specifically, Wells Fargo alleges that subsections (iv)[11] and (v)[12] in Section 2.02(g) were violated because the

---

[11] Section 2.02(g)(iv) provides in pertinent part,

> Grantor and, if applicable, each General Partner, have at all times accurately maintained, and will continue to accurately maintain, their

11

Goshen LLCs were mere shells controlled by RLJ Trust. Wells Fargo next contends RLJ is liable for the *full amount* of the indebtedness because defendant violated subsections (vii)[13] in section 2.02(g) of the Security Instrument by failing to remain adequately capitalized.

It is not necessary for this court to address whether RLJ Trust violated either the SPE or adequate capitalization provisions because, as RLJ Trust points out, even if it had breached either provision, such breaches would only trigger liability for actual losses, and no such losses occurred. The guaranty requires RLJ to indemnify and hold harmless the Lender from any and

---

respective financial statements, accounting records and other partnership, company or corporate documents separate from those of any other Person and Grantor….Grantor and, if applicable, each General Partner have not at any time since their formation commingled, and will not commingle, their respective assets with those of any other Person and each has maintained and will maintain their assets in such a manner such that it will not be costly or difficult to segregate, ascertain or identify their individual assets from those of any other Person….Grantor and, if applicable, each General Partner have at all times since their formation accurately maintained and utilized, and will continue to accurately maintain and utilize, their own separate bank accounts, payroll and separate books of account, stationary, invoices, and checks.

Pl.'s 56.1 Stmt. of Facts ¶ 10, Exh. 2, Mortgage and Security Agreement § 2.02(g)(iv).

[12] Section 2.02(g)(v) of the Security Instrument provides, in pertinent part,

Grantor and, if applicable, each General Partner, have at all times paid, and will continue to pay, their own liabilities from their own separate assets and each has allocated and charged and shall each allocate and charge fairly and reasonably any overhead which Grantor and, if applicable, any General Partner, shares with any other Person, including, without limitation, for office space and services performed by any employee of another Person.

*Id.*, Exh. 2, Mortgage and Security Agreement § 2.02(g)(v).

[13] Section 2.02(g)(vii) provides in pertinent part

Grantor and, if applicable, each General Partner, have been at all times, and will continue to be, adequately capitalized in light of the nature of their respective businesses.

all "Losses" incurred or suffered arising out of or in connection with "[a]ny Grantor's failure to comply with the provisions of Sections 2.02(g), 12.01, 16.01 or 16.02, inclusive, of the Security Instrument." (Pl.'s 56.1 Stmt. of Facts ¶ 14; Dkt. 110-1, Exh. 6, Guaranty § 1.2.) At no point has Wells Fargo identified or claimed it suffered any *separate losses* resulting from a breach of the SPE or adequate capitalization provisions. It only claims that "the loss suffered in connection with the failure to maintain the adequate capitalization of the Goshen LLCs is the *balance left on the debt* after applying the proceeds from the sale of the property." (Pl. Reply at 14 (emphasis added).) Wells Fargo's proposed interpretation is inconsistent with the non-recourse nature of the guaranty. *See e.g., Wells Fargo Bank, N.A.* v. *MBS—The Hills, Ltd.*, No. 02–10–289–CV, 2013 WL 4033622, *4 (Tex. Ct. App. Aug. 8, 2013) (affirming judgment in defendants favor because Wells Fargo did not submit evidence of any separate harm resulting from waste and instead sought to recover the full amount of indebtedness by alleging a violation of a carve-out provision, which was actually narrow and only allowed recovery for "any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions" such as waste).

## CONCLUSION AND ORDER

For the foregoing reasons, Wells Fargo's motion for summary judgment (dkt. 108) is denied. The case is set for status on February 23, 2016 at 11:00 to set a trial date. The parties are directed to explore potential settlement and to advise the court if referral to the designated magistrate judge for a settlement conference would be useful.

Date: February 4, 2016

U.S. District Judge Joan H. Lefkow

13